**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:10CV356-DSC**

| | |
|---|---|
| **ROGER ROSS and CYNTHIA ROSS,** | )<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| **FLO FOODS, INC., and TRACY E. FAUST,** | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on Defendants' "Motion for Partial Summary Judgment" (document #19) and the parties' associated briefs and exhibits. See documents ## 20, 23, 24, and 27.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this Motion is now ripe for the Court's determination.

Having fully considered the arguments, the record, and the applicable authority, the Court grants Defendants' Motion as to Plaintiffs' federal claim, declines supplemental jurisdiction of their remaining state claims, and remands this matter to state court, as discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a civil rights action brought under 42 U.S.C. § 1981 along with state law claims arising from an incident between Plaintiffs Roger and Cynthia Ross, who are husband and wife, African-American, and residents of Cleveland County, North Carolina, and the individual Defendant Tracy E. Faust. The incident occurred at a Gastonia Captain D's restaurant which is owned and

operated by the corporate Defendant Flo Foods, Inc.[1]

Taking the facts in the light most favorable to the Plaintiffs, on September 18, 2009 they arranged to meet their daughter and her husband for dinner at the Captain D's. Upon arrival, Plaintiffs approached the counter and placed their orders. Cynthia Ross waited at the counter for their food, while Roger Ross went to the restroom. Cynthia Ross recognized one of the employees behind the counter, April Chisholm, who had worked with her at a church pre-school.

When Plaintiffs entered the restaurant, Defendant Faust and his son Henry Faust, a principal of the corporate Defendant, were sitting at the front of the restaurant where they customarily watched operations.

After Plaintiffs ordered, a white female customer returned to the counter complaining that she had not gotten what she ordered. Sandra Faulkner was the cashier who had taken the order. She believed that the order was correct, and that the customer was just trying to get a free meal. When Defendant Faust heard the woman complaining, he intervened and sided with the customer. He approached Lamar White, the African-American assistant manager at the restaurant. Ms. Faulkner testified in her deposition that Defendant Faust yelled at White in a belittling, "angry and hateful" manner that he was not doing his job. White responded by instructing Faulkner to apologize to the customer and get the receipt from her table. Defendant Faust also told Faulkner to get the receipt and straighten it out. Faulkner walked to the dining area and retrieved the receipt.

During this time, Cynthia Ross remarked to Chisholm that Defendant Faust was rude and disrespectful. She received her and her husband's food and walked toward the first open table in

---

[1] The parties dispute whether the individual Defendant Tracy E. Faust had any ownership interest in Defendant Flo Foods, Inc. or was an agent of Flo Foods during the events at issue in this case. Because the Court is resolving Defendants' Motion for Summary Judgment on Plaintiffs' federal claim on other grounds, the Court does not reach that issue.

the dining area.  As Cynthia Ross placed her food on the table, Defendant Faust approached her demanding to know what she had said to Chisholm.  Plaintiff replied that she did not have to tell him.

The parties hotly dispute what happened next.  Accepting Cynthia Ross's deposition testimony as true, Defendant Faust got very upset and jabbed her chest twice with his finger, demanding to know what she had said. Plaintiff responded that she said he was rude.  Henry Faust testified that he suggested they give Cynthia Ross her money back and have her leave because employee matters were not her concern.  Cynthia Ross testified that Defendant Faust then "exploded," grabbing her arms and forcibly moving her towards the door, saying "get out" of "my place."   In the light most favorable to Plaintiffs, Defendant Faust grabbed Plaintiff's arms with sufficient force to cause bruising.

In her deposition, Faulkner corroborates that Defendant Faust grabbed Plaintiff's arm and pulled her towards the door, saying, "Get out of my store now" and "get out."

Defendant Faust denies that he ever placed his hands on Ross.  He says that they moved from the place they initially argued near the tables to an area "over by the trash bins" next to the door. When asked how they got there, Faust could not remember. Henry Faust also testified to a "big movement" but he too, did not know how it happened.

Plaintiff testified that she broke Defendant Faust's grip and grabbed his shirt to fend him off, tearing a button and pocket on his shirt as they struggled. His cell phone fell to the floor. Defendant Faust started to swing at her with open hands, and landed two "licks" on the right side of her face.

Plaintiff Roger Ross testified in his deposition that he exited the bathroom unaware of what had transpired.  He saw his wife with Defendant Faust and thought they knew each other and were talking. As he got closer, he saw Faust was "all up in my wife's face." He stepped in between them

3

and asked what was going on. Defendant Faust told Roger Ross to keep his wife out of his business. Defendant Faust pushed Roger twice. Roger Ross pushed back. When Defendant Faust drew his fist back as if to strike him, Roger Ross warned Defendant Faust that he would hurt him if he hit him. Roger Ross testified that he gave this warning because he did not want to hurt someone he perceived as an older man.

According to Faulkner, the situation just grew "worse and worse." Customers left. Employees stopped working and watched in disbelief. Faulkner and other employees were calling out for Ken Armstrong, the restaurant manager, who was in the back. Plaintiff Cynthia Ross called her daughter on her cell phone, telling her to hurry because her father was being attacked.

Henry Faust testified that Roger Ross remained in a "defensive posture" and that his father was "posturing" as well. Defendant Faust concedes that he "may"have raised his hand at Roger Ross. Roger Ross drew his fist back, believing that Defendant Faust was about to hit him. Roger Ross testified that Henry Faust, who had remained seated to this point, stepped between them and blocked Roger's arm as he swung to defend himself. Roger Ross and Faulkner testified that Defendant Faust then swept the Ross's tray of food and drink off the table. He then raised a tray at Roger Ross. According to Faulkner, Defendant Faust broke Roger Ross's wrist watch during the scuffle.

Defendant Faust testified that at this point, Armstrong emerged from the back of the store and grabbed him from behind, pulled him back and "pinned" him against the wall. Faulkner and Cynthia Ross testified that Armstrong exclaimed that Defendant Faust was not going to hit a woman. Faulkner testified that Defendant Faust appeared to be "furious" at Armstrong for holding him.

Armstrong's intervention ultimately quelled the fracas. Plaintiffs were given a refund and offered a complimentary meal. Plaintiff Roger Ross was upset and wanted to leave. Cynthia Ross

4

announced that she had come to eat and wanted to stay. Plaintiffs testified that at this point, Defendant Faust spontaneously stated that his conduct was not racially motivated. Henry Faust and his father then left the restaurant. Plaintiffs sat at a table with their food but were unable to eat. A few minutes after Plaintiff's daughter and her husband arrived, an African-American female employee stopped at their table and apologized. She said what had happened was "terrible" because Defendant Faust was the owner of the restaurant. This revelation shocked Plaintiffs to the extent that they left.

At her deposition, Faulkner testified that on other occasions she had heard Defendant Faust call African-American employees derogatory names. Other than this testimony and Plaintiffs' assumption that Defendant Faust's spontaneous denial of racial animus amounts to proof that his actions were racially motivated, there is no evidence of any racially discriminatory motive in the record.

On January 27, 2010, Plaintiff filed this action in Cleveland County Superior Court. As amended, the Complaint alleges a claim for race discrimination under 42 U.S.C. § 1981 as well as state law claims for common law assault and battery and unfair and deceptive trade practices under N.C. Gen. Stat. § 75.1.

On July 9, 2010, Defendants removed the state court action to the United States District Court for the Western District of North Carolina, alleging the existence of federal question subject matter jurisdiction.

On June 21, 2011, Defendants filed their Motion for Partial Summary Judgment as to Plaintiffs' § 1981 claim and portions of their state law claims.

Defendants' Motion has been fully briefed and is therefore ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See also Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

### B. Claim under 42 U.S.C. § 1981

To establish a prima facie case of race discrimination under 42 U.S.C. § 1981 sufficient to withstand a motion for summary judgment, plaintiffs claiming that a retail establishment interfered with their right to contract because of race must prove that: (1) they are members of a racial

minority, (2) defendants had an intent to discriminate against them on the basis of their race, and (3) the discrimination concerned an area enumerated by the statute. 42 U.S.C. § 1981; Bobbitt by Bobbitt v. Rage, Inc., 19 F.Supp.2d 512, 517 (W.D.N.C. 1998). Although the statute's purpose is to protect the enjoyment by minorities of benefits of contractual relationships, it does not aim to provide a general civility code. Manatt v. Bank of Am., N.A., 339 F.3d 792, 798 (9th Cir. 2003). Under § 1981, plaintiffs "must demonstrate by a preponderance of the evidence that the actions taken … were 'more likely than not based on the consideration of impermissible factors' such as race, ethnicity, or national origin." Pollard v. Quest Diagnostics, 610 F.Supp.2d 1, 18 (D.D.C. 2009) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

Intentional discrimination must be shown either by direct evidence or circumstantial evidence. Eddy v. Waffle House, Inc., 335 F.Supp.2d 693, 696 (D.S.C. 2004). Plaintiffs have not established the existence of any direct evidence of intentional discrimination. Brown v. Small, 437 F.Supp.2d 125, 130 n.7 (D.D.C. 2006) (direct evidence "is evidence that, if believed by the fact finder, proves the particular fact in question without any need for inference." (citing Randle v. LaSalle Telecomms, Inc., 876 F.2d 563, 569 (7th Cir.1989)); Eddy, 335 F.Supp.2d at 698 ("[d]irect evidence includes evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested … decision.")

To present proof by circumstantial evidence of intentional discrimination, plaintiffs must satisfy the heightened burden shifting analytical framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (citing Murrell v. The Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001)). "Under this framework, a prima facie case of discrimination must first be established." Eddy, 335 F.Supp.2d at 696 (citing Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000)); Williams, 372 F.3d at 667.

7

If plaintiffs meet this burden, the burden then shifts to defendants to provide evidence of a "legitimate, nondiscriminatory reason" for their actions. Id. at 667-68.

Once defendants produce evidence showing nondiscriminatory motive, the burden shifts back to plaintiffs to prove that it is mere pretext and that race was the real reason for the defendants' treatment of plaintiffs. Id. "Although the respective evidentiary burdens shift back and forth under the framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Williams, 372 F.3d at 667

In order to establish a prima facie case of intentional discrimination in a § 1981 action relating to the purchase of goods or services, plaintiffs must show that: (1) they are members of a protected class, (2) they sought to enter into a contractual relationship with defendants, (3) they met the defendants' ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers, and (4) they were denied the opportunity to contract for goods or services that were otherwise afforded to white customers. Williams, 372 F.3d at 667-68 (citing Murrell, 262 F.3d at 257).[2]

Applying these principles, Plaintiffs have failed to establish a prima facie case of discrimination. Although they are members of a protected class who sought to contract with Flo Foods, and therefore meet the first two elements of a prima facie case, they have failed to meet the

---

[2] In their Brief in Opposition, Plaintiffs argue that the Court should formulate the final elements of the prima facie case as "(3) they did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) they were deprived of those services, and/or (b) they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." Gennell v. Denny's Corp., 378 F.Supp.2d 551, 558 (D.Md. 2005) (citing Callwood v. Dave & Buster's, Inc., 98 F.Supp.2d 694, 707 (D. Md. 2000)). As Defendants point out in their Reply, however, in Williams, 372 F.2d at 667-68, the Fourth Circuit declined to adopt the Callwood standard. A recent case from the District Court for the Middle District of North Carolina recognizes that it is "not clear whether" the Fourth Circuit permits Callwood as an alternative to Williams. Jones v. K&R Nutrition, Inc., 2010 WL 322019 *5 FN 2 (M.D.N.C. 2010).

8

third and fourth elements.

Plaintiffs not only sought to, but did in fact contract with Flo Foods to purchase food from Captain D's. They also received a full refund and a complimentary meal, which they ate without interruption in the Captain D's dining area. The third and fourth elements require that Plaintiffs "present evidence that they were denied the right to contract for the services" provided by the Captain D's, including "services ordinarily provided" and "that [were] otherwise afforded to white customers." Thomas v. Freeway Foods, Inc., 406 F.Supp.2d 610, 623 (M.D.N.C. 2005) (citing Williams, 372 F.2d at 667-68). Plaintiffs have not presented any evidence that white patrons received preferential treatment or that any similarly situated African-Americans have been denied the opportunity to contract. Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001). There is also no evidence that any other African-American customer has ever complained of racial discrimination at this Captain D's restaurant (or any other owned by Flo Foods). See Evans v. Holiday Inns, Inc., 951 F.Supp. 85, 88 (D. Md. 1997) (race discrimination claim "fatally undercut" in part because two other African-American guests were not evicted).

Plaintiffs attempt to meet their evidentiary burden with assumptions and conclusory allegations. Plaintiffs point to the facts that they and some of the restaurant employees are African-American; that on this and prior occasions, Defendant Faust spoke rudely to African-American employees; that Plaintiff Cynthia Ross spoke critically about Defendant Faust to an African-American employee; that Defendant Faust reacted angrily and violently; and that Defendant Faust spontaneously denied any racial motives. "Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient." Lizardo, 270 F.3d at 104 (citing Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) (anti-discrimination law "does not make [defendants] liable for doing stupid or even wicked things;

9

it makes them liable for discriminating")). See also Daniels v. Dillard's, Inc., 373 F.3d 885, 887-88 (8th Cir. 2004) (African-American customer's prima facie case under § 1981 failed because she relied only on her own speculation that the defendant store had declined her check and not given her the same discount offered to white customers; Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389, 404 (N.D.N.Y. 2008) ("Plaintiffs' 'feelings and perceptions of being discriminated against are not evidence of discrimination'") (citing Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999); Evans, 951 F.Supp. at 88 (race discrimination claim "fatally undercut" because "there is no evidence beyond the plaintiffs' bald opinions to support it"); White v. Denny's, Inc., 918 F.Supp. 1418, 1426 (D.Col. 1996) (conclusory allegations alone will not defeat the entry of summary judgment). The law requires much more, including specific facts showing that there is a genuine issue for trial on their claim of intentional racial discrimination. Id.

Assuming arguendo that Plaintiffs have established a prima facie case of discrimination, Defendants have responded with a nondiscriminatory motive for Defendant Faust's conduct. Defendants assert that he was angry that Cynthia Ross made critical comments about him to an employee and that she was interfering with his business. Since Defendants can articulate a nondiscriminatory reason for Defendant Faust's objectionable behavior, "[t]o survive summary judgment, plaintiffs must now establish the existence of a genuine issue of material fact as to whether defendants' proffered reasons are unworthy of belief." White, 918 F.Supp. at 1426 (citing Randle v. City of Aurora, 69 F.3d 441, 452 n. 17 (10th Cir. 1995)). For the same reasons stated above, Plaintiffs have likewise failed to establish that Defendants' alternative nondiscriminatory motive was a pretext for discrimination.

### C. Supplemental Jurisdiction of State Law Claims

Following dismissal of Plaintiffs' only federal claim, it is within the Court's broad discretion whether to retain supplemental jurisdiction of their remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("the district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction); and Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (under § 1367(c), the district courts "enjoy wide latitude in determining whether or not to retain to retain [supplemental] jurisdiction over state claims when all federal claims have been extinguished"), citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Moreover, declining supplemental jurisdiction where all federal claims have been dismissed is consistent with the general principle that federal jurisdiction is limited. Accord Chesapeake Ranch Water Company v. Board of Com'rs of Calvert County, 401 F.3d 274, 277 (4th Cir. 2005) (having dismissed federal claims, district court properly declined supplemental jurisdiction of state claims); and Mercer v. Duke University, 401 F.3d 199, 202 (4th Cir. 2005) (same). See also Pineville Real Estate Operation Corp. v. Michael, 32 F.3d 88, 90 (4th Cir. 1994).

Finally, "it is well-settled that a district court's power to remand pendent state claims to state court is inherent in statutory authorization to decline supplemental jurisdiction under § 1367(c)." Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 606 (4th Cir. 2002), citing Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (noting that circuit courts of appeal unanimously hold that power to remand is inherent in § 1367(c)).

Applying these principles, and expressing no opinion as to the merits of Plaintiffs' state law claims, the Court declines supplemental jurisdiction and remands those claims to state court.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. Defendants' "Motion for Partial Summary Judgment" (document #19) is **GRANTED IN PART**, that is, **GRANTED** as to Plaintiffs' claim under 42 U.S.C. § 1981 which is **DISMISSED WITH PREJUDICE**.

2. Plaintiffs' remaining claims and the instant action are **REMANDED** to Cleveland County Superior Court.

3. The Clerk is directed to send copies of this Memorandum and Order to the parties' counsel**.**

**SO ORDERED, ADJUDGED AND DECREED.**

Signed: August 4, 2011

David S. Cayer
United States Magistrate Judge